UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINQUE ABDULLAH,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT, BLAKE WILLIAMS, and DOES 1 through 10, inclusive,<br><br>　　　　　　　　Defendants. | Case No.:  18cv1634 DMS (MSB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This case comes before the Court on Defendant's motion for summary judgment. Plaintiff filed an opposition to the motion, and Defendant filed a reply. For the reasons set out below, the motion is denied.

**I.**

**BACKGROUND[1]**

Defendant Blake Williams is a former San Diego Police Officer. On August 16, 2014, at approximately 1:50 a.m., he was on duty and working on Imperial Avenue when

---

[1] The material facts set out below are construed in the light most favorable to Plaintiff. *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004).

he heard gunshots near his location. Defendant and another officer, Roy Medina, ran in the direction of the gunshots. Defendant and Officer Medina saw four black males run away from the area of the gunshots and get into a white four-door vehicle. The vehicle's lights turned on and the vehicle drove off at a high rate of speed. Defendant and Officer Medina then ran back to their patrol car and began searching for the white vehicle. They observed a white vehicle and another San Diego Police Department vehicle stopped at an intersection. The white vehicle looked like the vehicle they had just seen driving away from the area of the gunshots. That vehicle was running, the lights were one, the two front doors were open and the rear left door was open. No one was in the vehicle, and there were no officers in the other patrol car. Officer Medina stayed at that location, and eventually advised the responding officers that there were two firearms inside the white vehicle.

Defendant joined other officers who were searching for the shooting suspects. At approximately 2:00 a.m., a resident contacted Defendant from their upstairs window to say that someone was in their backyard. Defendant ran to the side of the property towards a wooden fence separating the front yard from the back yard.

Surveillance video from the residence confirms Defendant ran toward the fence. (*See* Decl. of Seetal Tejura in Supp. of Mot. ("Tejura Decl."), Ex. 4.) Video from several minutes before also shows Plaintiff and another individual running through the neighborhood and through the resident's property. That video shows Plaintiff hunkering down behind the fence in an apparent attempt to hide from the officers, and eventually shows Plaintiff lying down on the ground in a fetal position with his back towards the fence. The video shows Defendant arriving at the fence and shining his flashlight and peering over the top of the fence. Defendant states he did not say anything to Plaintiff at that time, but Plaintiff states Defendant told him to "stay right there." (*Compare* Decl. of Blake Williams in Supp. of Mot. ("Williams Decl.") ¶11 *with* Decl. of Dominique Abdullah

///
///
///

2

in Supp. of Opp'n to Mot. ("Abdullah Decl.") ¶3.)[2] Defendant then jumped over the fence landing directly over the top of Plaintiff. The parties dispute exactly what happened after that, but the video reflects Defendant immediately striking Plaintiff numerous times with his flashlight. Other officers arrive on the scene, and another officer jumps the fence to assist Defendant. After that officer arrives, and after the officers apparently gain control of Plaintiff's hands, Defendant strikes Plaintiff at least two additional times with his fist.

Plaintiff was taken into custody and eventually pleaded guilty to a felony charge of California Penal Code section 246[3], along with enhancements due to prior felonies. He was sentenced to fifteen years in prison, and has been in custody since his arrest. He filed the present case on July 19, 2018. After initial motion practice, the only claim remaining in the case is one for excessive force against Defendant.

## II.
## DISCUSSION

Defendant argues he is entitled to summary judgment on Plaintiff's excessive force claim for two reasons. First, he argues the Complaint is untimely and Plaintiff is not entitled to equitable tolling of the statute of limitations. Second, Defendant asserts he is entitled to qualified immunity.

### A. Equitable Tolling

As set out in previous orders in this case, Plaintiff's Complaint is untimely absent equitable tolling of the statute of limitations. (*See* ECF Nos. 13, 20.)

///

---

[2] The video does not include any audio footage.

[3] This statute provides: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, as defined in Section 362 of the Vehicle Code, or inhabited camper, as defined in Section 243 of the Vehicle Code, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year." Cal. Penal Code § 246.

> Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: "(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith."

*Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir 1999) (quoting *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988)). Plaintiff bears the burden of alleging facts to support each of these elements. *Eggers v. United States*, No. CV 08-986-JSL (AGR), 2008 WL 11409888, at *4 (C.D. Cal. July 16, 2008).

Here, there is no dispute Plaintiff submitted a complaint to the San Diego Police Department concerning Defendant's conduct during Plaintiff's arrest, and that Internal Affairs investigated that complaint, which included an interview with Defendant. Defendant argues, however, that was insufficient to provide notice for the purpose of equitable tolling because Internal Affairs was unable to provide any monetary relief to Plaintiff as a result of his complaint. Notably, Defendant fails to provide any authority to support this argument, and the Court is otherwise unpersuaded. As stated by the California courts, "[t]he fundamental purpose of the statute of limitations is to afford a defendant timely notice of the claim against him *so that he may assemble a defense while the facts are still fresh*." *Aerojet Gen. Corp. v. Superior Court*, 177 Cal. App. 3d 950, 954 (1986) (emphasis added). There is no requirement that the notice be provided in a way or with the goal of providing the complainant any type of relief, much less monetary relief. Rather, the purpose of the notice requirement is to provide the relevant entities and individuals an opportunity to investigate and take remedial action in a timely manner. That purpose was served here, and thus the Court rejects Defendant's argument that the notice provided does not entitle Plaintiff to equitable tolling.

Turning to the element of prejudice, Defendant argues that element is met here because memories have faded in the more than six years since the incident, and an original communication recording from the arrest was purged from the San Diego Police Department records. (Mem. of P. & A. in Supp. of Mot. at 11-12.) Surely, the passage of

time may have a negative effect on personal memories of the incident, and it is unfortunate that one recording was purged. However, Defendant's argument ignores the other evidence of the incident that still exists, namely the video and the other recordings that were part of the criminal investigation. Considering these other items of evidence, the Court cannot say Defendant will suffer any prejudice if this case is allowed to proceed.

The third and final element for equitable tolling considers whether Plaintiff's conduct has been reasonable and in good faith. Defendant argues Plaintiff's conduct does not meet that standard. Although Plaintiff has been incarcerated since the incident, Defendant asserts Plaintiff has had access to the law library and has been able to make phone calls throughout his incarceration. Defendant suggests that with those provisions, Plaintiff should have filed the present case sooner than he did. However, the Court cannot say Plaintiff's delay was unreasonable or in bad faith. As stated in the Court's previous order, Plaintiff did file a complaint with the San Diego Police Department concerning his arrest. Defendant suggests Plaintiff received notice that investigation was completed in February 2016, therefore he should have filed this case sooner than he did, but it is unclear whether Plaintiff actually received that notice as it was sent to a residential address rather than Plaintiff's actual custodial address. (*See* Tejura Decl., Ex. 14.)

Although the Court's previous findings on equitable tolling were based solely on the factual allegations in Plaintiff's Complaints, the evidence now submitted does not change the Court's analysis of this issue. In sum, Defendant has not shown there are no genuine issues of material fact such that he is entitled to judgment as a matter of law that the case was untimely filed.

**B.   Qualified Immunity**

The only other issue in this motion is whether Defendant is entitled to qualified immunity from Plaintiff's claim for excessive force. Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Claims of qualified immunity require the court to consider two questions: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right, *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and (2) whether the right was clearly established -- that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Here, Defendant argues he is entitled to qualified immunity under either prong. First, he argues there was no violation of Plaintiff's Fourth Amendment rights because the force used was reasonable. The Fourth Amendment prohibition against unreasonable seizures permits law enforcement officers to use only such force to effect an arrest as is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (quotation marks omitted). In balancing these factors, courts consider: "(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others, . . . (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight," and any other "exigent circumstances [that] existed at the time of the arrest." *Chew v. Gates*, 27 F.3d 1432, 1440-41 & n.5 (9th Cir. 1994) (citing *Graham*, 490 U.S. at 396). Because the Fourth Amendment test for reasonableness is inherently fact-specific, *see Chew*, 27 F.3d at 1443 (citing *Reed v. Hoy*, 909 F.2d 324, 330 (9th Cir. 1989)), it is a test that escapes "mechanical application" and "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396; *Fikes v. Cleghorn*, 47 F.3d 1011, 1014 (9th Cir. 1995). In light of the factually intensive nature of the inquiry, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

///

In this case, Defendant goes through each of the factors set out above and asserts they weigh in favor of a finding that the force used was reasonable. The parties agree on the facts surrounding two of those factors. First, there is no dispute Defendant struck Plaintiff with his flashlight and his fist. (*See* Mem. of P. & A. in Supp. of Mot. at 16; Mem. of P. & A. in Opp'n to Mot. at 15.) There is also no dispute the crime at issue was serious, namely a shooting with a loaded gun. (*See* Mem. of P. & A. in Supp. of Mot. at 18; Mem. of P. & A. in Opp'n to Mot. at 17.)

On the other two factors, however, there are disputes. Specifically, the parties dispute whether Plaintiff posed a threat to the safety of the officers or others and whether Plaintiff was actively resisting or attempting to evade arrest. On the threat factor, Defendant asserts the facts warrant a finding that Plaintiff posed a threat. According to Defendant, those facts include the crime being investigated (a shooting), which gave rise to the possibility that Plaintiff was armed with a deadly weapon, the lighting in the area (dark), and Plaintiff's clothes (baggy). However, the video of the incident, construed in Plaintiff's favor, does not support a finding that Plaintiff posed an immediate threat to the officers or others. Rather, the video reflects Plaintiff was lying on the ground with his back towards the officers when Defendant spotted him behind the fence. Plaintiff states Defendant told him to "stay right there," (Abdullah Decl. ¶3), and the video reflects Plaintiff complied with that command. Construing the facts in Plaintiff's favor, Plaintiff did not pose an immediate threat to the safety of the officers or others.

Defendant also states Plaintiff stipulated to the fact that he was resisting arrest. (Mem. of P. & A. in Supp. of Mot. at 19.) However, Plaintiff clearly disputes that assertion. (Adbullah Decl. ¶9.) Indeed, Plaintiff states he did not resist Defendant or any other officer in any way. (*Id.*) And the video, construed in Plaintiff's favor, could support that finding.

Defendant does not construe the facts in Plaintiff's favor in concluding that the force used in this case was reasonable. However, consistent with the general summary judgment standard, this Court must construe the facts in the light most favorable to Plaintiff. As so construed, the facts reflect Defendant immediately struck Plaintiff with his flashlight

7

several times despite Plaintiff's compliance with Defendant's commands. Defendant then struck Plaintiff with his fist several times even though another officer had arrived on the scene and secured Plaintiff's hands. On these facts, a reasonable jury could conclude that the force used was not reasonable, and thus Defendant did violate Plaintiff's Fourth Amendment rights. Accordingly, Defendant is not entitled to summary judgment under this prong of the qualified immunity analysis.

Defendant argues that even if he is not entitled to qualified immunity under this prong, he is entitled to qualified immunity under the other prong, *i.e.*, it would not have been clear to a reasonable officer that his conduct in this case was unlawful under the circumstances presented. In support of this argument, Defendant asserts there was no Supreme Court or Ninth Circuit case law addressing the facts presented in this case. According to Defendant, those facts included:

> strikes with a flashlight when [the officer was] by himself and then with a fist when he had an assisting officer, upon a suspect who (1) was hiding in a small and dark area after having been involved in a shooting, (2) may have had access to a gun, and (3) was resisting movement of his arms away from his body.

(Mem. of P. & A. in Supp. of Mot. at 21-22.) However, as explained above, Plaintiff disputes that he was resisting, and on the present motion, the Court must construe the facts in the light most favorable to Plaintiff. Under Plaintiff's version of the facts, Defendant not only struck Plaintiff with a flashlight several times despite the absence of any resistance, but he also struck Plaintiff repeatedly with his fist after another officer arrived on the scene and gained control of Plaintiff's hands. Under these circumstances, it would have been clear to a reasonable officer that his use of force was unreasonable. *See McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018) (stating cases "clearly establish that the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued."); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *Sallenger v. Oakes*, 473 F.3d 731, 742

(7th Cir. 2007) ("Viewing the facts in the light most favorable to the plaintiff, a reasonable officer would have known that administering closed-fist punches and flashlight blows, including ones to the head, after the arrestee was handcuffed, continuing to strike him after he had stopped resisting arrest and failing to place him in the proper position after hobbling him violated the individual's Fourth Amendment right to be free from excessive force.") Accordingly, Defendant is not entitled to qualified immunity under the "clearly established" prong.[4]

## III.
## CONCLUSION

For the reasons set out above, Defendant's motion for summary judgment is denied.

**IT IS SO ORDERED**.

Dated: March 4, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court

---

[4] In light of the factual disputes set out above, the Court also denies Defendant's request for summary judgment on Plaintiff's request for punitive damages. *See S.T. by & through Niblett v. City of Ceres*, 327 F. Supp. 3d 1261, 1283 (E.D. Cal. 2018) (denying summary judgment on punitive damages in light of factual dispute surrounding use of force); *Kyles v. Baker*, 72 F. Supp. 3d 1021, 1050 (N.D. Cal. 2014) (denying motion for summary judgment on punitive damages because "[t]he evidence in this case is sufficient to raise a triable issue as to the state of mind of each officer during the … incident.")